JOURNAL ENTRY and OPINION
Appellant Tammi Means appeals the trial court's judgment in favor of appellee Cuyahoga County Department of Children and Family Services (CCDCFS) granting CCDCFS permanent custody of her biological daughter Victoria Means. Appellant assigns the following four errors for our review:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PROCEEDING TO ADJUDICATION WITHOUT THE FILING OF A COMPLAINT.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PROCEEDING TO ADJUDICATION WITHOUT SERVICE OF PROCESS UPON THE PARTIES.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PROCEEDING TO HEARING UPON A FILING OF A MOTION FOR PERMANENT CUSTODY WHERE THE JOURNAL ENTRY ADJUDICATING THE CHILD ABUSED WAS NEVER FILED OF RECORD.
 IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PROCEEDING TO HEARING ON A MOTION FOR PERMANENT CUSTODY WHERE SERVICE OF PROCESS WAS NEVER PERFECTED UPON THE PARTIES.
Having reviewed the record and the legal arguments of the parties, we affirm the trial court's judgment. The apposite facts follow.
On June 6, 1997, Tammi Means took her two-month-old child to the hospital where doctors diagnosed the child with having numerous unexplained injuries. The child's injuries included a fractured femur, healing fractures to three of her ribs, scratches and bruises on her legs, and an unexplained lesion on the inside of her mouth. Finding these injuries inconsistent with accidental trauma and the explanations offered by Tammi Means and her husband William Means, doctors who examined Victoria Means referred the matter to CCDCFS. Additionally, the state indicted both Tammi and William Means on criminal charges in connection with the allegation of abuse.[1]
On June 12, 1997, CCDCFS filed a group of documents with the Cuyahoga County Clerk of Court's office including a complaint alleging abuse, a motion for pre-adjudicatory temporary custody, and an affidavit in support of the motion. Although the clerk's office accepted all of the documents for filing, the office failed to place a file stamp on the complaint.
On June 16, 1997, Tammi Means and her husband attended the emergency temporary custody hearing. At the hearing, the Meanses, through counsel John Hildebrand, waived probable cause and agreed to an order committing their child into the emergency temporary custody of CCDCFS.
On July 2, 1997, the court sent a summons and complaint to Tammi and William Means at their home address. On July 23, 1997, counsel accepted service of the complaint signing his name and indicating his position as attorney for the Means.
On August 12, 1997, Tammi Means, with counsel, attended a temporary custody hearing. William Means, who was in county jail on charges of child endangerment, did not attend the hearing. Prior to the hearing, the parties reached an agreement and counsel for CCDCFS provided each party with a copy of the amended complaint. During the hearing, Tammi Means admitted to the allegations of abuse contained in the amended complaint. Following the hearing the court issued its findings. In accordance with Tammi Means' admissions, the trial court found Victoria Means to be an abused child and granted CCDCFS temporary custody. The court submitted its entry to the clerk's office for journalization on September 6, 1997. The clerk's office placed the entry in the journal book as an official entry, but failed to time stamp the order.
CCDCFS filed a motion for permanent custody on February 13, 1998. CCDCFS served the motion on Tammi Means, her counsel and William Means via regular U.S. mail on February 13, 1998. Additionally, the record reflects the court served a summons and copy of the motion on William Means at Lorain Correctional Reception Center on May 4, 1998, via certified mail accepted by an employee of the prison. The court served Tammi Means at her grandfather's house, where she claimed to work as his caretaker, via personal service accepted by her grandfather on May 7, 1998. Tammi Means never objected to any defect in service.
After a number of continuances, the court began the hearing on the CCDCFS' motion for permanent custody on December 17, 1998. The court continued the hearing until January due to the unavailability of a CCDCFS witness. The hearing resumed on January 21, 1999. Tammi Means appeared at the permanent custody hearing, with counsel, and presented witnesses on her behalf.
In a journal entry filed February 17, 1999, the trial court granted CCDCFS' motion for permanent custody. Tammi Means filed a notice of appeal on March 19, 1999. William Means did not appeal the order of permanent custody and is not a party to this appeal.
Tammi Means filed her appellate brief with this court on October 8, 1999. On October 22, 1999, CCDCFS moved this court to permit a correction of the record below. CCDCFS alleged the record required correction to reflect its proper and timely filing of a complaint, and journalization of the trial court's Judgment Entry granting CCDCFS temporary custody of the child. CCDCFS supported its motion with an affidavit from the chief deputy clerk, Cuyahoga County Court of Common Pleas, Juvenile Division. In her affidavit, the chief deputy clerk stated that at the time CCDCFS filed its complaint, the clerk's office did not time stamp each document filed as a package. Further, she verified the clerk's office entered the Journal Entry in question in its journal as an official entry but failed to time stamp the order. This Court granted CCDCFS' motion and remanded the record to the trial court for correction.
Tammi Means' four assignments of error essentially allege the trial court lacked the requisite subject matter and personal jurisdiction to enter judgment. Because Means' first and third assignments of error raise a similar issue, we consider those errors together.
In her first assignment of error Tammi Means alleges the trial court lacked subject matter jurisdiction to enter judgment because the clerk of court's office failed to time stamp CCDCFS's complaint. Similarly, in her third assignment of error, Means alleges the trial court lacked jurisdiction to enter judgment because the clerk's office failed to properly journalize the trial court's order of September 6, 1997 granting CCDCFS temporary custody.
On October 22, 1999, CCDCFS filed with this Court a motion to correct the trial court records, pursuant to App.R. 9(E), which this Court granted. App.R. 9(E) provides
 If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.
(Emphasis on original.) Either the trial court or the court of appeals may order the record corrected or supplemented. App.R. 9(E). An appellate court can authorize the correction of the trial court's record when the accuracy of the proposed changes is undisputed. State v. Schiebel (1990), 55 Ohio St.3d 71, 81,564 N.E.2d 54, 66. In the instant case, no dispute as to the accuracy of the proposed changes existed the clerk's office received the documents for filing and included the documents in the record on the dates alleged. Further, Means fails to demonstrate any prejudice to her ability to defend the action flowing from the clerk's oversight. As the record has been corrected to reflect the truth, we overrule Means' first and third assignments of error.
In her second and fourth assignments of error, Means argues the trial court lacked the requisite personal jurisdiction to enter judgment. In her second assignment of error, Means argues the trial court lacked personal jurisdiction to enter judgment in this action because it failed to serve the child's father, William Means, with the original complaint. In support of this proposition, Means cites In Re: John D. Ware (July 17, 1980), Cuyahoga App. No. 40983, unreported. In Ware this court held that an appellant mother could assert the failure of service upon a putative father. We conclude that Ware is distinguishable from this case.
In Ware, the party seeking custody of the child made no attempt to serve the putative father and the putative father made no court appearances in the action. Unlike the party in Ware, CCDCFS served process on William Means at the prison where he was located. Further, unlike the father in Ware, William Means made an appearance at the first hearing in this case accompanied by counsel. Additionally, William Means agreed to commit his child to CCDCFS' custody on an emergency, temporary basis. Therefore, we conclude, unlike the father in Ware, William Means had notice and opportunity to assert his parental rights.
Finally, Tammi Means alleges the court failed to effect service on her as well. She argues the court lacked personal jurisdiction to enter judgment. This argument lacks merit.
It is well settled that a court acquires personal jurisdiction over a party either by service of process or by voluntary appearance and submission of the party or the parties legal representative to the court's jurisdiction. Maryhew v. Yova (1984), 11 Ohio St.3d 154, 464 N.E.2d 538. Here, Tammi Means appeared at every stage of this case in the company of her lawyer. Through counsel, Tammi Means submitted responsive pleadings and motions. We conclude, by her actions she voluntarily submitted herself to the trial court's jurisdiction. Accordingly, we overrule Tammi Means' second and fourth assignments of error.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
 ____________________________ PATRICIA ANN BLACKMON, J.
PATTON, P.J., and KILBANE, J., CONCUR.
[1] Both Tammi and William Means entered a plea of guilty to child endangerment. Tammi Means received five years probation, William Means received two years incarceration. Additionally William Means faced extradition to Nevada for violating the terms of his probation in that state on a previous criminal charge.